■ HARRIET CHAMBERLAIN et al., Respondents, v MODULAR PUBLICATIONS, INC., Appellant. — Judgment, Supreme Court, New York County (A. E. Blyn, J.), entered November 29, 1982 adjudging that plaintiffs are entitled to the rights of ownership of the shares of stock and proprietary lease for the fourth floor at premises 49 West 24th Street, New York City, and to actual physical possession thereof, and granting to plaintiffs other relief, is unanimously affirmed, with costs. The defendant tenant's changes on the subscription agreement to refer to the earlier lease of April 23, 1980 were not merely stylistic or for clarification of what the parties were both agreeing to. On the contrary, they were intended as substantive changes to at least lay the groundwork for an argument that the tenant would not have to bear its share for debt service on the underlying mortgage, and perhaps preserve all its rights under the previous lease. As such, the changes were a counteroffer and a rejection of the original offer. The intention of the tenant in making the change is a question of fact. In his conclusion of law No. 7, the Trial Judge found that the "sole purpose" of the modification was to have the lease control over the co-operative plan so that the tenant would not have to pay monthly maintenance to the co-operative corporation. In his closing argument at the trial, tenant's attorney took the position that his client would not be liable for debt service. The first counterclaim in defendant tenant's answer alleges that under the lease defendant had the right to purchase at a price not to exceed $75,000, and that no mention is made of any mortgage in that lease. And the prayer for relief, apparently referring to the first counterclaim, asks for a declaratory judgment compelling plaintiffs to sell the fourth floor to defendant for $75,000, or less, "inclusive of any share of the mortgage on said building allocated to the shares representing said floor." The claim sought to be reserved is wholly invalid, a hypertechnical reading contrary to both the plain legal situation and the general understanding on the purchase of a co-operative tenancy. What the co-operative tenant purchases for his purchase price — here $75,000 — is shares of stock in the co-operative corporation and the right to a proprietary lease of his premises from the co-operative corporation; he does not purchase a direct interest in the fee of the underlying real property. The shares of stock,

like all stock, represent an interest in the assets of the corporation subject to its liabilities. The chief asset of the corporation is the fee in the underlying real property, which may be and usually is subject to a mortgage. And it is well understood that the purchase of stock in the co-operative corporation will not relieve anyone of the economic burden of the underlying mortgage, that the underlying mortgage and the debt service on that will have to be covered usually by inclusion in the maintenance, and perhaps on maturity of the mortgage by payment of the balance. The reservation of a right not to be subject to the economic burden of the mortgage would present an impossible situation. How could other co-op purchasers know what their share of the mortgage burden is going to be, if one purchaser clearly reserves the right to litigate whether he is to bear any share? The lease provided that the tenant shall have the option to purchase shares in the co-op "upon such terms and conditions as set forth in the Offering Plan", and that if tenant fails to enter into a subscription agreement "upon the conditions set forth in the plan," within the time specified, then the tenant shall be deemed to have waived its option to purchase. The terms and conditions surely include, implicitly if not expressly, that the economic burden of the mortgage like all the obligations of the co-operative corporation shall fall on the shareholders — the co-op tenants. Further, the language of the changes made by the tenant is broader than a mere reservation of any rights the tenant may have had under the lease with respect to the purchase price. The "except" provision inserted by the tenant in paragraph 16 reads: "Conflicts between this agreement and the Plan shall be resolved in favor of the Plan, *except as represented in a certain lease dated April 23, 1980, attached hereto.*" (Italics ours.) This would raise problems as to inconsistencies between the plan and the proprietary lease on the one hand and the April 23, 1980 lease on the other. Tenant adhered to its position even after the sponsor again offered tenant the opportunity to subscribe for a price of $75,000 and in all other respects on the same terms as other co-operative tenants. On all the facts, tenant did not accept the plan. Concur — Sandler, J. P., Asch, Silverman, Fein and Milonas, JJ.